United States District Court
Southern District of Texas

**ENTERED**

August 09, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELLE LISA ODONOHOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:18-CV-3609 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Michelle Lisa Odonohoe[1] filed this case under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying her request for social security disability insurance and supplemental security income benefits. Odonohoe and the Commissioner filed cross-motions for summary judgment (Dkts. 6, 9). After considering the pleadings, the record, and the applicable law, the court recommends that the district court **GRANT** the Commissioner's motion, **DENY** Odonohoe's motion, and affirm the Commissioner's decision.[2]

---

[1] Odonohoe is referred to as "Michelle Salinas" in her medical records. She confirmed at the hearing that Odonohoe is her maiden name and she is the same person as Michelle Salinas. Tr. at 41.

[2] The District Judge referred this case to this Magistrate Judge for report and recommendation. Dkt. 12.

## I.  Background

### 1.  Factual and Administrative History

In January 2016, Odonohoe filed applications for social security disability and supplemental security income benefits claiming May 16, 2015 as the onset date of disability.  Odonohoe claims that she has been unable to work since May 16, 2015 due to depression, arthritis, morbid obesity and vision problems.  Dkt. 9 at 6-7; Tr. at 16, 240, 242.[3]  Odonohoe was 52 years old at the time of her alleged onset date and turned 55 on November 2, 2017.

Odonohoe's benefit applications were denied by the agency on initial review and reconsideration.  After a hearing at which Odonohoe and a vocational expert testified, the ALJ issued a partially favorable decision, finding Odonohoe disabled as of November 2, 2017 (her 55th birthday), but not disabled prior to that date.  Tr. at 38-90.  The Appeals Council denied review on March 16, 2018, and the ALJ's decision became the final decision of the Commissioner.

The ALJ's partial disability finding hinged on two factors:  by November 2017 Odonohoe's multiple sclerosis had progressed, resulting in a change in her residual functional capacity from light work to sedentary work, with additional limitations; and, according to the Grid Rules, the change in her residual functional capacity resulted in a disability finding when Odonohoe reached age 55.

---

[3] "Tr. at __" refers to the page of the consecutively numbered administrative transcript/record found at Dkt. 3.

## 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Stockman v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

"If the Commissioner's findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is

disabled.  20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276. F.3d at 718.  A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the second step, the ALJ determines whether the claimant has a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Under Fifth Circuit precedent, "[a]n impairment can be considered…not severe *only if* it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work…." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)); *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) ("Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." ).  The second step requires the claimant to make a *de minimis* showing. *Salmond*, 892 F.3d at 817.

At step three the ALJ determines whether the severe impairment meets or equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets one of the listings in Appendix 1, the claimant is disabled.  If the claimant's symptoms do not meet a listed impairment, the sequential analysis continues to the fourth step.

Prior to step four, the ALJ must determine the claimant's "residual functional capacity" (RFC).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  "The RFC is the

individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e), 404. 1545(e); *Giles*, 433 F. App'x at 245; *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). Based on the RFC, the ALJ determines at step four whether the claimant can perform her past work. The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton*, 209 F.3d at 453 (citing 42. U.S.C. § 423(d)(1)(A)).

At step five the burden shifts to the Commissioner to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* Thus, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis, finding that Odonohoe met the insured status requirements of the Act through December 31, 2020; had not engaged in substantial gainful activity since her alleged onset date of May 16, 2015; and had the severe impairments of osteoarthritis of her knees, multiple sclerosis, morbid obesity, and depression. Tr. 16-32. The ALJ determined at step three that none of her

impairments, alone or in combination, met or equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 22.

The ALJ found that prior to November 2, 2017, Odonohoe had the residual

functional capacity to perform light work with the following additional limitations:

> She can lift/carry 20 pounds occasionally and 10 pounds frequently with
> ability to stand and/or walk 5 of 8 hours total and sit 6 of 8 hours for a full 8-
> hour day.  The claimant has unlimited ability to push/pull and perform gross
> and fine movements except for occasional pushing and pulling with the lower
> extremities, bilaterally.  The claimant can occasionally climb stairs but no
> ladders, ropes, scaffolds, or running.  She can occasionally bend, stoop,
> crouch, crawl, balance, and twist, but cannot squat.  The claimant should
> have no exposure to any heights, dangerous machinery or uneven surfaces.
> The claimant gets along with others, understands detailed instructions,
> concentrates and performs detailed tasks, and responds and adapts to
> workplace changes and supervision.

Tr. at 25; 20 C.F.R. § 404.1567(b) and 416.967(b).  Beginning November 2, 2017, the ALJ

found that Odonohoe's residual functional capacity changed from light to sedentary work.

Tr. at 29.  The ALJ included the following additional limitations to the sedentary residual

functional capacity for Odonoho as of November 2, 2017:

> [S]he is unable to sustain for full 8 hours a day. The claimant can sit for 5
> out of 8 hours and stand and/or walk 2 out of 8 hours total for a 7-hour day
> only.  In addition, the claimant can understand, remember, and carry out only
> simple instructions and tasks per her progressive multiple sclerosis condition.

*Id.*  He further found that beginning on November 2, 2017 Odonohoe was no longer able

to transfer job skills to other occupations.  Tr. at 30.

Based on the testimony of a vocational expert, the ALJ found that since May 16,

2015, Odonohoe has been unable to perform her past relevant work. Tr. at 30.  Applying

the Grid Rules and her residual functional capacity for light work with some additional

limitations, the ALJ found that Odonohoe could perform other work in the national economy. However, once her residual functional capacity changed from light to sedentary work with no transferable job skills, the Grid Rules dictated a disability finding when Odonohoe turned 55 on November 2, 2017. Tr. 31-32. Therefore, the ALJ concluded that Odonohoe became disabled on November 2, 2017. *Id.*

## II.   Analysis

Odonohoe's appeal challenges the ALJ's denial of disability for the period from May 16, 2015 until November 2, 2017. Odonohoe raises two points of error she claims would have resulted in a disability finding for the entire period: (1) the ALJ erred at step three by failing to find her mental impairment met Listing 12.04; and (2) the ALJ erred at step five by failing to include all of her limitations in the hypothetical posed to the vocational expert.

The Commissioner argues that substantial evidence supports the ALJ's decision that Odonohoe was not disabled prior to November 2, 2017, her 55th birthday. Specifically, the Commissioner argues the ALJ properly utilized the "special technique" for assessing whether Odonohoe's mental impairment met a Listing and that his decision is supported by substantial evidence. The Commissioner also contends the hypothetical question posed to the vocational expert included all limitations supported by the record.

### 1. Listing 12.04

In the third step of the sequential analysis, the ALJ considered whether Odonohoe's impairment from depression met or medically equaled Listing 12.04. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1. To meet

Listing 12.04, a claimant must meet all the requirement of Listing 12.04 paragraphs A and B, or meet the requirements of paragraph C.

The ALJ's decision discussed his finding that Odonohoe did not meet the paragraph B and C criteria. Tr. 23-25. To meet paragraph B, the claimant must have "extreme" limitation in one, or "marked" limitation in two, of four areas of mental functioning: 1. understand, remember, or apply information; 2. interact with others; 3. concentrate, persist, or maintain pace; and 4. adapt or manage oneself. Odonohoe contends that the ALJ overlooked evidence of marked limitation in all four areas and thus erred in finding she did not meet Listing 12.04. *See* Dkt. 9 at 8-12. Nothing in the record demonstrates that the ALJ's failed to consider the evidence.

An ALJ is not required to specify or address all the evidence in the record that does or does not support his conclusion. *Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *14 (N.D. Tex. Sept. 30, 2015) ("The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected.") (internal citation omitted). Moreover, the record demonstrates that the ALJ considered much of the evidence Plaintiff cites. For example, The ALJ discussed Odonohoe's records from MHMRA of Harris County, which report that psychiatric medication significantly helped her depression. Tr. at 21-22. The ALJ considered, but assigned little weight to her GAF score, because "the GAF scale has no direct correlation to the severity requirements in the mental disorder listings. *See* Fed. Reg. 50746-65 (August 21, 2000)." Tr. at 23.

8

In support of his findings[4] in each area of mental functioning, the ALJ cited record evidence, including Odonohoe's activities of daily living and treatment notes from examining physicians. *Id.* (citing numerous references to her mental state in Exhibits 3E, 1F, 2F, 5F, 9F, 11F, 14F, 19F, 20F). In addition, the ALJ considered the opinions of State Agency psychological consultants who found that Plaintiff's mental condition did not meet or equal Listing 12.04. Tr. at 25, 96, 104, 116, 128. Substantial evidence supports the ALJ's conclusion at step three of the sequential analysis that Plaintiff did not have an impairment that met or equaled Listing 12.04.

## 2. Onset Date

Odonohoe appears to argue the ALJ erred in determining the date of her disability by concluding "without any supporting rationale, …[that] as of [her] 55th birthday on November 2, 2017, [she] could not perform any work on a full time basis." Dkt. 9 at 7 (emphasis in original). Odonohoe's argument misrepresents the ALJ's findings.

Social Security Ruling 83-20, which sets forth the procedure for determining the onset date of a disability, requires the ALJ to consider relevant factors, including the allegation of onset, work history, and medical evidence. SSR 83-20, 1983 WL 31249 at *1. "The starting point of determining onset date is the claimant's allegation of when the disability began," and "the date the disability caused the claimant to stop work is frequently of great significance." *Id.* at *2. However, the medical evidence is the primary factor to

---

[4] The ALJ found that Odonohoe had a mild limitation in the area of understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and no limitation in the area of adapting or managing oneself. Tr. 23-24.

be considered in determining onset date. *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) (quoting SSR 83-20).

Plaintiff alleged an onset of disability as of May 16, 2015 when she last worked. Yet, according to her own testimony, she stopped working in May 2015 not due to her impairments, but because she was laid off. Tr. at 43-44. Furthermore, by accepting unemployment benefits from May 2015 through January 2017, she affirmed she was "willing and able to work" during that period, and she confirmed during her hearing testimony that she was seeking employment during that period. *Id.* at 19, 47-48. Odonohoe was sufficiently able-bodied to live alone until August 2017 when she moved in with her boyfriend. As with the termination of her employment, she did not move in with him due to disability, but because her home sustained damage in Hurricane Harvey. *Id.* at 42, 49-50. Odonohoe could ambulate on her own beyond May 2015 and did not begin using a rolling walker until Spring 2017. *Id.* 64-65.

The ALJ's decision that Plaintiff was not disabled until November 2017 was based on evidence that her limitations from multiple sclerosis, a slowly progressing condition with which she was diagnosed in February 2017, became more limiting over time. Tr. at 29-30, 54. Although notes from an August 1, 2017 medical appointment state she was "sitting in wheelchair," the record does not contain any medical evidence that she needed or was prescribed a wheelchair. The August 2017 notes also state Odonohoe had "no new or unusual musculoskeletal symptoms," and denied "headache, dizziness, blurred vision, chest pain/pressure, SOB/DOE, diaphoresis, N/V, paresthesia or lower extremity edema[.]" Tr. at 771-76.

The medical records reflect different observations from November 2017.   On November 20, 2017, Dr. Carmella's notes also reflect that Plaintiff was in a wheelchair, (Tr. at 837, 844), but unlike the August 2017 reference, her notes document acute, chronic left knee pain, as well as "Multiple Sclerosis: +drooling. Incontinence. Change in vision. Feels as if there is improvement overall. Has follow up in April 2018." Tr. at 834.   In February 2018, Dr. Carmella stated that Plaintiff was a fall risk due to her multiple sclerosis and bilateral knee pain, and she experienced weakness with flareups of her multiple sclerosis.   She further opined in February 2018 that Plaintiff's disability was permanent. Tr. 777-78.

By November 2, 2017, Odonohoe's condition and RFC for sedentary work with no transferable job skills dictated a finding of disability based on Rule 201.06 of the Grid Rules. 20 C.F.R. Part 404, Subpart P, Appendix 2.   Before that date, even if her walker limited her to sedentary work, she was not disabled under Grid Rule 201.15, because she still possessed skills that were transferrable to other work.[5]   Based on the medical evidence that her multiple sclerosis had progressed by November 2017, the ALJ found her residual functional capacity to allow only sedentary work with additional limitations and found she had no transferable skills because at that time she could only understand, remember, and carry out only simple instructions and tasks due to her progressive multiple sclerosis condition.   Tr. at 29.   According to the Grid Rules, and based on her RFC, lack of

---

[5] Based on the vocational expert's testimony, that ALJ found that "[p]rior to November 2, 2017, the claimant had the following transferable skills to light level: service orientation, communication, data entry, problem solving, information gathering, monitoring, time management, decision-making, computer/technical literacy, instructing, and negotiation." Tr. at 30.

transferrable skills, and additional limitations, the ALJ found Odonohoe disabled as of November 2, 2017, her 55th birthday.

The ALJ's decision is consistent with SSR 83-20 because the medical records were not ambiguous and allowed the ALJ to determine an appropriate onset date. *Luckey v. Astrue*, 458 F. App'x 322, 327 (5th Cir. 2011) ("There is no requirement that the ALJ consult an additional medical advisor where, as here, the onset date of the claimant's disability is not ambiguous."); *see also Aguilar v. Astrue*, Civil Action No. 2:13-cv-00017, 2014 WL 5500689 *9 (S.D. Tex. Oct. 29, 2014) (ALJ did not err in relying on "Plaintiff's testimony, his medical records, the opinions of consultative doctors and a VE," to take into account the degenerative nature of plaintiff's impairment in determining an onset date five months before a scan revealed a partial collapse of plaintiff's hip). As the ALJ explained, the finding that as of November 2, 2017 Plaintiff's RFC and lack of transferable skills rendered her incapable of working "is supported by the longitudinal medical records, history of treatment, objective clinical findings, the claimant's subjective complaints, the observations and comments of her treating sources, and all of the evidence of record considered as a whole." Tr. at 30.

### 3. Hypothetical Question.

The ALJ did not err by relying on the vocational expert's testimony that prior to November 2, 2017 Plaintiff was able to perform other work in the national economy. A hypothetical question directed to a vocational expert must reasonably incorporate all limitations recognized by the ALJ, and the claimant must be afforded the opportunity to

correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

The ALJ's hypothetical question to the vocational expert incorporated all the limitations supported by the record and Odonohoe's counsel had the opportunity to cross-examine the vocational expert. Although the hypothetical did not include a limitation for using an assistive device for walking, the vocational expert testified that, even using an assistive device, Plaintiff would be able to perform the job of administrative assistant. Tr. at 89. Therefore, the ALJ's decision at step 5 that Plaintiff could perform work existing in the national economy prior to November 2, 2017 is supported by substantial evidence and not based on incorrect legal standards.

### III.   Conclusion and Recommendation

For the reasons stated above, the court concludes that ALJ's decision that Plaintiff was disabled as of November 2, 2017 is supported by substantial evidence. Therefore, the court recommends that the Commissioner's motion be **GRANTED**, Odonohoe's motion be **DENIED**, and the final decision of the Commissioner be **AFFIRMED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. §636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 09, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge